Filed 11/24/14  P. v. Lagrange CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065065 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD250169) |
| HAROLD WILLIAM LAGRANGE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan and Eugenia Eyherabide, Judges.  Affirmed in part and remanded with directions.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

After his motion to suppress evidence pursuant to Penal Code[1] section 1538.5 was denied, Harold William Lagrange entered into a plea agreement. Pursuant to that agreement, Lagrange entered a guilty plea to one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)). The remaining counts were dismissed. Lagrange was granted probation for three years, subject to certain conditions.

Lagrange appeals contending the trial court erred in denying his motion to suppress evidence on Fourth Amendment grounds. He also contends that the minute order reflects the court imposed two conditions not mentioned in the court's oral pronouncement of the grant of probation. He further contends the provisions are overbroad and unrelated either to the crime or his rehabilitation.

We will assume, for the sake of argument, that police could not lawfully search Lagrange's bag incident to lawful arrest under the facts of this case. However, even if the search was unlawful the evidence would have lawfully been discovered when the belongings were impounded at the police department. (*Nix v. Williams* (1984) 467 U.S. 431, 445-446.) Because there is a conflict between the minute order and the court's oral pronouncement, and since the two challenged conditions were not discussed in the trial court, we will remand the case to the trial court with directions to address the question of whether the challenged conditions should be imposed, modified or rejected. We will affirm the trial court's denial of the motion to suppress evidence.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

STATEMENT OF FACTS

Since the conviction arises from a guilty plea, and the principal issue on appeal relates to a motion to suppress evidence, we will summarize the facts from the motion hearing held on October 30, 2013.

On the evening of August 16, 2013, San Diego Police officers were patrolling the area of 4700 Pacific Highway in the City of San Diego. The officers observed three men, who the officers suspected were drinking alcohol, in a dark parking lot. As the patrol car pulled into the lot Lagrange put down his beer and began to walk away. Police ordered him to stop. Lagrange hesitated but eventually put down the plastic bag he was carrying and walked back to where the other two men were standing.

A record check revealed a stay away order that prohibited Lagrange from being at that location. Lagrange was arrested for violating the order. He was handcuffed and placed in the back seat of the patrol car.

After Lagrange was placed in the patrol car, an officer picked up the plastic bag which was about 10 to 15 feet away and brought it to the police car. He opened the bag and found a closed rifle case inside the plastic bag. The officer cut the small lock off of the rifle case and discovered a rifle and component parts in the case.

Both police officers testified that standard procedure required that they take control of the suspect's property as they could be liable if they abandoned it. The officers testified that when the property of an arrested suspect is brought to the station the

3

containers must be opened and the contents inventoried in order to protect valuables and to prevent false claims of loss.

DISCUSSION

I

*SEARCH OF THE BAG*

Lagrange contends the search of the bag which contained the rifle was unlawful. He argues that the bag, being 10 to 15 feet away from him could not be searched incident to lawful arrest and that the search could not be justified as a preinventory search. The respondent contends the bag was lawfully searched incident to the lawful arrest of Lagrange. In any event, respondent contends the contents would have been inevitably discovered through the lawful inventory.

While it is tempting to weigh in on the somewhat unique nature of the search incident to arrest, the evidence clearly establishes the contents of the bag would have inevitably been discovered when it arrived at the police station as part of a lawful inventory process. Accordingly, our focus will only be on the impound/inventory issue.

A. Standard of Review

When we review a trial court's decision on a motion to suppress evidence we follow a recognized two-step process. First we review the trial court's determination of the historical facts. We apply the substantial evidence standard of review in that step. Once we have determined there is substantial evidence to support the trial court's factual findings we review the legal conclusions flowing from such facts under the independent,

4

or de novo standard of review.  (*People v. Brendlin* (2008) 45 Cal.4th 262, 268; *People v. Leyba* (1981) 29 Cal.3d 591, 596-598.)

In reviewing a prosecution claim of inevitable discovery we examine the entire record to determine if substantial evidence supports a finding, by a preponderance of the evidence, that the item seized would have inevitably been discovered notwithstanding the alleged error in its actual discovery.  (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1040.) We examine the objectively established facts surrounding the discovery, but do not consider whether the officers acted in good faith when they made the tainted seizure. (*Nix v. Williams, supra,* 467 U.S. at pp. 445-446.)  The question to be decided is whether the prosecution has shown by a preponderance of the evidence that even though the evidence was actually found unlawfully, it would have inevitably been discovered by a lawful process.

### B.  Analysis

Although we do not decide whether the evidence was lawfully seized incident to the arrest, we will conclude that even if the search was unlawful, lawful inventory procedures in this case would have lawfully discovered the same evidence

The prosecution presented unrebutted testimony that police were required to take custody of Lagrange's property.  They could not simply abandon it and there is no evidence of any alternative means of securing the property.  The testimony established the process and reasonableness of police procedure to inventory arrested suspect's property that is to be impounded in police custody.  The trial court heard the testimony

and indicated it found the testimony truthful and accurate. Thus we proceed on the basis the officers' testimony was accurate and reliable. The doctrine of inevitable discovery has been established as an exception to the exclusionary rule which would ordinarily call for exclusion of evidence which was otherwise unlawfully seized.

The leading case on inevitable discovery is *Nix v. Williams, supra*, 467 U.S. 431. In that case police officers had unlawfully interrogated Williams who had been indicted and represented by counsel. Williams took police to the location of the body of the murder victim, which had been dumped in a field in rural Iowa. Following his conviction, Williams's case was addressed in *Brewer v. Williams* (1977) 430 U.S. 387. There the court found a violation of the Sixth Amendment lead to the defendant's actions in helping police locate the body.

On retrial the state offered evidence that a search had been underway for the child who had been kidnapped and killed by Williams. The trial court, after hearing testimony about the search pattern and the frozen condition of the body, found the state had proved it would have inevitably discovered the body. On habeas corpus the Eighth Circuit Court of Appeals overturned the conviction because the state had not shown the absence of bad faith on the part of the officers who initially violated Williams's Sixth Amendment rights.

The Supreme Court in *Nix v. Williams, supra*, 467 U.S. at pages 445 to 446, held inevitable discovery was a proper exception to the rule of exclusion for constitutional errors. The court held that it was not necessary for the police to demonstrate the absence of bad faith in order to invoke the doctrine of inevitable discovery.

6

We turn then to the issue of whether police may lawfully impound and inventory the belongings of persons who have been arrested and are going to be booked into a custodial facility.

In *Illinois v. Lafayette* (1983) 462 U.S. 640, the court addressed the question of whether an incarcerated person's belongings could be impounded and inventoried. In that case the defendant was arrested for an offense and was taken to jail. At the jail the contents of the bag were examined and inventoried. During that process a small quantity of illegal drugs was discovered. The Supreme Court held that a routine inventory of the belongings of a person who has been arrested and will be incarcerated is lawful. (*Id.* at p. 648.) The court reasoned that such inventory would be reasonable where the suspect will be placed in jail. The fact there might be less intrusive means to protect the property did not render such inventory unreasonable. Thus the court found evidence of a crime which was discovered during a lawful inventory is admissible in a criminal case. (*Ibid.*; see *South Dakota v. Opperman* (1976) 428 U.S. 364.)

As we have noted there was testimony, which was believed by the trial court, that the bag in this case would have inevitably been opened and the contents examined at the police station during an established inventory process. Thus, as was the case in *Nix v. Williams, supra,* 467 U.S. at pages 445 to 446, the rifle found in the bag was admissible as against a claim of a Fourth Amendment violation.

## II

### *THE PROBATION CONDITIONS*

In the court's written order granting probation the court imposed conditions 10-a and 10-g, which require the probation officer to approve Lagrange's residence and employment. There was, however, no mention of these conditions in the court's oral statements regarding the conditions of probation. Lagrange contends we should strike the conditions because the oral record of proceedings should control over the written minutes. If we do not strike the conditions on that ground, Lagrange contends we should find them unconstitutionally vague. We decline to do either.

There is indeed a conflict between the written order, bearing the court's stamped signature, and the transcript of the sentencing proceedings. We think the better way to resolve the conflict is to remand the case to the trial court in order for that court to decide if the conditions were imposed and to address the challenge to their validity in this case. (*People v. Smith* (1983) 33 Cal.3d 596, 599; *People v. Price* (2004) 120 Cal.App.4th 224, 244-245.)

Lagrange is still on probation and the trial court is in the best position to determine if the challenged conditions are appropriate and/or whether they should be either stricken or modified. We express no opinion as to the validity of the conditions on this record.

DISPOSITION

The case is remanded to the trial court with directions to reconsider probation conditions 10-a and 10-g and to determine whether the conditions should be imposed, modified or stricken.  In all other respects the judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


McDONALD, J.


O'ROURKE, J.